UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONALD MCLEOD, | : | CIVIL ACTION NO. |
| *Plaintiff,* | : | 3:02CV1397 (RNC) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, DEPARTMENT OF SOCIAL SERVICES, | : | |
| *Defendant.* | : | NOVEMBER 7, 2003 |

## LOCAL RULE 56(A) STATEMENT OF UNDISPUTED FACTS

1. The plaintiff, Ronald McLeod, is a resident of Shelton, Connecticut. **Exh. 2, McLeod Deposition, p. 6:8-10**.

2. He is currently employed by the State of Connecticut, Department of Social Services, and has been so employed since January 2, 1980. **Exh. 2, McLeod Deposition, p. 7:3-9**.

3. The plaintiff was promoted by the defendant, Department of Social Services, to the position of Eligibility Services Supervisor, the position he currently holds. **Exh. 2, McLeod Deposition, p. 13:12-14**.

4. The plaintiff's current position of Eligibility Services Supervisor entails the day to day supervision of a unit of eligibility services workers which include overseeing the workers' caseloads, in addition to overseeing how the workers maintain their caseloads. **Exh. 2, McLeod Deposition, p. 17:6-14**.

5.  Georgette Fountain is an African-American black female eligibility services worker who was formerly under the supervision of the plaintiff. **Exh. 2, McLeod Deposition, p. 18:14-23**.

6.  The plaintiff supervised Georgette Fountain for eight (8) or nine (9) years. **Exh. 2, McLeod Deposition, p. 18:25; p. 19:1-3.**

7.  Lynn Gelzheiser is currently employed as a Principal Personnel Officer at the Department of Social Services. **Exh. 4, July 24, 2003 Deposition of Lynn Gelzheiser, p. 29:25; p. 30:1-4.**

8.  Ms. Gelzheiser received her formal academic training in Human Resources. She earned a Master's Degree in counseling, with a specialty in human resource development. **Exh. 4, Gelzheiser Deposition of July 24, 2003, p. 32:2-10.**

9.  Ms. Gelzheiser received on the job training in Human Resources subsequent to earning her Master's Degree, as well as receiving additional training in conducting investigations. **Exh. 4, July 24, 2003 Deposition of Lynn Gelzheiser, p. 34:15-25; p. 35:1, p. 36:12-23, p. 37:2-12, p. 38:3-15.**

10. As Principal Personnel Officer at the Department of Social Services, Ms. Gelzheiser has numerous duties which include, but are not limited to the following, managing the Human Resources activities and Labor Relations for the Southwest Region which includes initiating and conducting investigations into alleged violations of State Personnel Regulations. She has conducted as many as forty (40) investigations during the five (5) years

she has been employed with the Department of Social Services. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 3.**

11. Additionally, as Principal Personnel Officer with the Department of Social Services, Ms. Gelzheiser is obligated to initiate and conduct investigations upon receiving a formal, written complaint against an employee of the Southwest Region. The State of Connecticut Violence in the Workplace Policy and Procedures Manual for Human Resources Professionals requires Human Resources Personnel to thoroughly investigate any complaint of a perceived threat of violence. A report is produced upon completion of the investigation and is submitted to Mr. Rudolph Jones, Director of Human Resources for the Department of Social Services. Mr. Jones is responsible for reviewing the report, and if he concurs with the findings that a violation of the State Personnel Regulations occurred, he determines the level of disciplinary action. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 4; Exh. 17.**

12. Ms. Gelzheiser initiated an investigation into an incident on May 22, 2000 involving the plaintiff and Georgette Fountain, as a result of receiving a copy of a letter Ms. Fountain wrote to Mr. Keith Gatling and copied to Brenda Harris of the Affirmative Action Unit. Ms. Harris provided the letter to Ms. Gelzheiser, the content of which alleged hostile, threatening behavior and a violation of the Workplace Violence Prevention Policy and Procedure. It also alleged discriminatory behavior towards her. **Exh. 3;**

**Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 5, Exh. 16 and Exh. 18.**

13. Ms. Gelzheiser and Brenda Harris conducted dual investigation(s) involving the May 22, 2000 incident between the plaintiff and Georgette Fountain. The purposes of Ms. Gelzheiser's investigation into the incident was to determine whether or not the plaintiff violated Connecticut State Personnel Regulations, Section 5-240-1a(c) #4 "offensive and abusive conduct toward co-workers" and #8 "Deliberate violation of any law, State Regulation, or Agency Rule, specifically Executive Order No. 16, Violence in the Workplace Prevention Policy." Ms. Harris' purpose in investigating the incident involving the plaintiff and Ms. Georgette Fountain was to determine whether or not Mr. McLeod violated the agency's Affirmative Action Policy. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 6, Exh. 16.**

14. According to Mr. Rudolph Jones, Director of Human Resources at the Department of Social Services, in an effort to prevent having witnesses approached by Affirmative Action and then by Personnel, dual or "joint" interviews are done by the Personnel Officer and Affirmative Action after which they then go and write their own independent investigations. **Exh. 6, Deposition of Rudolph Jones, p. 17:10-15.**

15. Ms. Gelzheiser interviewed Ms. Fountain, the plaintiff and other witnesses to the incident involving the plaintiff and Ms. Fountain. Upon completing the investigation, Ms. Gelzheiser wrote and submitted her findings to Mr.

4

           Rudolph Jones. Ms. Gelzheiser found that Mr. McLeod did not violate Executive Order #16, however, she did find that the plaintiff's behavior did violate State Personnel Regulations, Section 5-240-1a(c), #4 "offensive and abusive conduct toward co-workers," and recommended that a pre-disciplinary meeting be convened. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraphs 7 and 8; Exh. 20.**

16.     In fact, the plaintiff agrees that a supervisor should be held to a higher standard than the people they supervise, be a role model for the people they supervise, be sensitive to the needs of their workers, as well as exhibit respect to the people he/she supervises. **Exh. 2, Deposition of Ronald McLeod, p. 59:5-12.**

17.     The plaintiff also agrees that a supervisor should exhibit dignity to the people he supervises, and that the work atmosphere should be that of mutual respect, free from abusive and arbitrary conduct. **Exh. 2, McLeod Deposition, p. 60:1-10.**

18.     Regarding the May 22, 2000 incident involving himself and Georgette Fountain, the plaintiff does not dispute that there was a loud, mutual exchange of words between himself and Georgette Fountain. **Exh. 2, Deposition of Ronald McLeod, p. 63:14-15; p. 64:9-19; p. 65:7-25.**

19.     The plaintiff does not dispute that it was inappropriate for him to have allowed the exchange between himself and Ms. Fountain to have taken place. **Exh. 2, Deposition of Ronald McLeod, p. 75:19-25; p. 76:1-13.**

20. Upon Ms. Gelzheiser's findings as a result of her investigation into the May 22, 2000 incident involving the plaintiff and Ms. Fountain that the plaintiff's behavior did violate State Personnel Regulations 5-240-1a(c), #4, the plaintiff received notification by the defendant that a pre-disciplinary meeting would be scheduled. **Exh. 8.**

21. Mr. Rudolph Jones is the Director of Human Resources for the Department of Social Services and has so been employed in this capacity for seven (7) years. His duties as the Director of Human Resources are numerous. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 3 and 4.**

22. Mr. Jones is also responsible for determining the appropriate level of discipline after the pre-disciplinary meeting is held, and is also authorized to place employees being investigated on Administrative Leave with pay under State Personnel Regulations Section 5-240-5a(f). **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 4 and 5.**

23. As a result of the information made available at the pre-disciplinary meeting, plaintiff was subsequently notified of his suspension. **Exh. 9.**

24. He filed a grievance and the grievance proceeded to Step Three (3) which was denied. **Exh. 10.**

25. The plaintiff's union representative advised him to allow his appeal to go to arbitration. **Exh. 2, Deposition of Ronald McLeod, p. 96:15-21; p. 97:1-4.**

26. Ms. Gelzheiser initiated an investigation into an incident involving the plaintiff, and Constance Onofrio which occurred on August 3, 2000. She

was advised that an incident occurred between the aforementioned on this date, in which Ms. Onofrio alleged that the plaintiff swore and spit at her, and that she was afraid of him. This allegation, according to Ms. Gelzheiser, could be a potential violation of the Violence in the Workplace Prevention Policy. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 9; Exh. 16.** As a result, the plaintiff was placed on Administrative Leave With Pay. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 10; Exh. 11.**

27. Ms. Gelzheiser's investigation into the August 3, 2000 incident between the plaintiff and Ms. Onofrio focused on whether or not the plaintiff violated State Personnel Regulations, Section 5-240-1a(c), #4 and #8 and Executive Order No. 16. She interviewed the plaintiff and Ms. Onofrio. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraphs 11 and 12; Exh. 16.**

28. Regarding the incident that occurred between Ronald McLeod and Constance Onofrio on August 3, 2000 Mr. Jones concurred with the decision made by Michael Carey, Principal Personnel Officer and Labor Relations representative for DSS and Lynn Gelzheiser to immediately place Mr. McLeod on Administrative Leave with pay. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 10-15.**

29. Mr. Jones concurred with the recommendation by Lynn Gelzheiser to reinstate Mr. McLeod from Administrative Leave. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 10-15.**

30. On or about October 23, 2000 Mr. Jones received an investigation report from Lynn Gelzheiser regarding the incident involving Ronald McLeod and Constance Onofrio.

31. Ms. Gelzheiser found that the plaintiff's behavior toward Ms. Onofrio did not violate Governor John Rowland's Executive Order No. 16; however, his behavior did violate State Personnel Regulation 5-240-1a(c), #4, and she recommended that a pre-disciplinary meeting be convened. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 13; Exh. 16.**

32. On November 1, 2000 Mr. Jones sent a Certified Letter to Mr. McLeod scheduling a pre-disciplinary meeting in order to present charges of a violation of State Personnel Regulations Section 5-240-1a(c) #4, "Offensive or abusive conduct toward co-workers." The initial date for the Pre-Disciplinary meeting was subsequently rescheduled. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 10-15.**

33. Mr. Jones conducted the Pre-Disciplinary meeting on November 29, 2000 in his office at 25 Sigourney Street, Hartford, CT. As a result of the investigation report findings and the Pre-Disciplinary meeting Mr. Jones determined the appropriate level of discipline for the violation to be a one-day suspension from duty without pay. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 10-15.**

34. On February 1, 2001 on Mr. Jones' behalf, Lynn Gelzheiser presented Mr. McLeod and his union representative Dan Sorenson with a letter dated January 29, 2001 notifying Mr. McLeod of the one-day suspension and the

|     |     |
| --- | --- |
|     | date it would be served. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 10-15.** |
| 35. | The plaintiff subsequently entered into a stipulated agreement with the Department of Social Services regarding both of the suspension he received as a result of the May 22, 2000 incident with Georgette Fountain, and the August 3, 2000 incident involving Constance Onofrio. **Exh. 2, Deposition of Ronald McLeod, p. 98:24-25; p. 99:1-3; Exh. 19.** |
| 36. | As part of the Stipulated Agreement, plaintiff withdrew all of his grievances. **Exh. 2, Deposition of Ronald McLeod, p. 99:6; Exh. 19.** |
| 37. | The plaintiff signed the stipulated agreement which acknowledged that his behavior was inappropriate, and agrees that he entered into the stipulated agreement freely, voluntarily, without duress, intimidation, undue influence, or any threatened loss of benefit. **Exh. 2, Deposition of Ronald McLeod, p. 99:7-25; p. 100:1-3; Exh. 19.** |
| 38. | The plaintiff also agreed that he was made whole for the reduction of his salary rate that was in effect at the time of his suspensions. **Exh. 2, Deposition of Ronald McLeod, p. 100:12-17; Exh. 19.** |

DEFENDANT
Department of Social Services

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Tammy D. Geathers
Assistant Attorney General
Federal Bar No. ct22426
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5340
Fax: (860) 808-5383
E-Mail Address:
Tammy.Geathers@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing **Local Rule 56(A) Statement of Undisputed Facts** was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 7th day of November, 2003, first class postage prepaid to:

William B. Barnes, Esq.
Rosenstein & Barnes
1100 Kings Highway East
P.O. Box 687, Suite 1-C
Fairfield, CT 06430
Tel.: (203) 367-7922

_____
Tammy D. Geathers
Assistant Attorney General