UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONALD MCLEOD, | : | CIVIL ACTION NO. |
| *Plaintiff,* | : | 3:02CV1397 (RNC) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | | |
| DEPARTMENT OF SOCIAL | | |
| SERVICES, | : | |
| *Defendant.* | : | NOVEMBER 7, 2003 |

<u>MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendant moves for summary judgment as to the above-captioned case. As shown below, the defendant is entitled to judgment as a matter of law because the plaintiff's allegations of discrimination, because of his race/color, gender and marital status to a Hispanic female fails to state a cause of action.

**I.    INTRODUCTION**

The plaintiff in this civil action is an employee of the State of Connecticut, Department of Social Services, employed as an Eligibility Services Supervisor. In his capacity as an Eligibility Services Supervisor, the plaintiff oversees a unit of Eligibility Services Workers in the Adult Services Division at the Department of Social Services.

The plaintiff has alleged in his complaint that from February, 2000 until the present, he has been subjected to a continuing pattern and practice of discriminatory discipline and harassment in employment on the basis of his gender (male), his race (Caucasian), his color (white), and marital status (married to a Hispanic female). The plaintiff's civil action against the

State of Connecticut, Department of Social Services, is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended by 42 U.S.C. §2000e.

Two female employees currently employed by the defendant, made complaints against the plaintiff on two separate occasions. One of these individuals, Georgette Fountain, an African-American female Eligibility Services Worker, previously supervised by the plaintiff, sent a memo to her union steward. In the memo, she stated that she was verbally assaulted and felt threatened by her supervisor, Ronald McLeod. The memo was copied to Ms. Brenda Harris, defendant's Affirmative Action Administrator, who in turn forwarded it to Ms. Lynn Gelzheiser, Principal Personnel Officer at the Department of Social Services. The memo involved an incident between the two which occurred at their office on May 22, 2000. Based upon the statements in her memo, concurrent Affirmative Action and Human Resources investigations were initiated.

On August 3, 2000, Ms. Constance Onofrio, a Caucasian, white female employed by the defendant as an Eligibility Services Supervisor, informed Ms. Gelzheiser that the plaintiff swore at her in a voice mail message, and again when she encountered him as she was leaving the building. She initially told Ms. Gelzheiser that the plaintiff was angry and spit at her and that she was afraid of him. As a result, the plaintiff was immediately placed on administrative leave with pay, because the behavior Ms. Onofrio accused the plaintiff of engaging in toward her violated State Personnel Regulation 5-240-1a(c), #4 "offensive or abusive conduct toward co-workers...", and #8, "Deliberate violation of any law, State Regulation or agency rule, i.e., State of Connecticut Violence in the Workplace Prevention Policy."

After the interview(s) of the parties, it was determined that there was no one to prove that the plaintiff had in fact spit at Ms. Onofrio, or that the plaintiff swore at or used vulgarities

2

toward her. However, it was determined by Ms. Gelzheiser that the plaintiff did engage in behavior toward Ms. Onofrio that was inappropriate and a recommendation was made that a pre-disciplinary meeting be convened.

The plaintiff's behavior toward both of the individuals was subsequently found to have violated State Personnel Regulation 5-240-1a(c) in both the May 22, 2000 incident involving Georgette Fountain, and the August 3, 2000 incident involving Constance Onofrio. The plaintiff received a four (4) day suspension for the May 22, 2000 incident, and a one (1) day suspension for the August 3, 2000 incident involving Ms. Onofrio.

The defendant will show that not only will the evidence so overwhelmingly support the conclusion that the plaintiff cannot prove a prima facie case of discrimination, but the inferences to be drawn from the plaintiff's own testimony are so weak as to require a judgment for the defendant as a matter of law, the defendant submits that it is entitled to summary judgment for the following reasons:

A.    Plaintiff cannot prove a prima facie case of discrimination.

B.    Plaintiff cannot prove that race was a motivating factor in his treatment by the defendant.

C.    Plaintiff cannot prove that gender was a motivating factor in his treatment by the defendant.

D.    The plaintiff cannot establish that the defendant's actions were a pretext for discrimination.

E.    Discrimination based on marital status is not a proper cause of action under Title VII, 42 U.S.C. § 2000e.

## II.    <u>FACTS</u>

The facts supporting this Motion are set forth more fully in the accompanying Local Rule 56(A) statement.  Those facts are briefly summarized below.

The plaintiff, Ronald McLeod, is a resident of Shelton, Connecticut.  **Exh. 2, McLeod Deposition, p. 6:8-10.**

He is currently employed by the State of Connecticut, Department of Social Services, and has been so employed since January 2, 1980.  **Exh. 2, McLeod Deposition, p. 7:3-9.**

The plaintiff was promoted by the defendant, Department of Social Services, to the position of Eligibility Services Supervisor, the position he currently holds.  **Exh. 2, McLeod Deposition, p. 13:12-14.**

The plaintiff's current position of Eligibility Services Supervisor entails the day to day supervision of a unit of eligibility services workers which include overseeing the workers' caseloads, in addition to overseeing how the workers maintain their caseloads.  **Exh. 2, McLeod Deposition, p. 17:6-14.**

Georgette Fountain is an African-American black female eligibility services worker who was formerly under the supervision of the plaintiff.  **Exh. 2, McLeod Deposition, p. 18:14-23.** The plaintiff supervised Georgette Fountain for eight (8) or nine (9) years.  **Exh. 2, McLeod Deposition, p. 18:25; p. 19:1-3.**

Lynn Gelzheiser is currently employed as a Principal Personnel Officer at the Department of Social Services.  **Exh. 4, July 24, 2003 Deposition of Lynn Gelzheiser Deposition, p. 29:25; p. 30:1-4.**

Ms. Gelzheiser received her formal academic training in Human Resources. She earned a Master's Degree in counseling, with a specialty in human resource development. **Exh. 4, Gelzheiser Deposition of July 24, 2003, p. 32:2-10**.

Ms. Gelzheiser received on the job training in Human Resources subsequent to earning her Master's Degree, as well as receiving additional training in conducting investigations. **Exh. 4, July 24, 2003 Deposition of Lynn Gelzheiser, p. 34:15-25; p. 35:1, p. 36:12-23, p. 37:2-12, p. 38:3-15**.

As Principal Personnel Officer at the Department of Social Services, Ms. Gelzheiser has numerous duties which include, but are not limited to the following, managing the Human Resources activities and Labor Relations for the Southwest Region which includes initiating and conducting investigations into alleged violations of State Personnel Regulations. She has conducted as many as forty (40) investigations during the five (5) years she has been employed with the Department of Social Services. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 3.**

Additionally, as Principal Personnel Officer with the Department of Social Services, Ms. Gelzheiser is obligated to initiate and conduct investigations upon receiving a formal, written complaint against an employee of the Southwest Region. The State of Connecticut Violence in the Workplace Policy and Procedures Manual for Human Resources Professionals requires Human Resources Personnel to thoroughly investigate any complaint of a perceived threat of violence. A report is produced upon completion of the investigation and is submitted to Mr. Rudolph Jones, Director of Human Resources for the Department of Social Services. Mr. Jones is responsible for reviewing the report, and if he concurs with the findings that a violation of the State Personnel Regulations occurred, he determines the level of disciplinary action. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 4; Exh. 17.**

Ms. Gelzheiser initiated an investigation into an incident on May 22, 2000 involving the plaintiff and Georgette Fountain, as a result of receiving a copy of a letter Ms. Fountain wrote to Mr. Keith Gatling and copied to Brenda Harris of the Affirmative Action Unit. Ms. Harris provided the letter to Ms. Gelzheiser, the content of which alleged hostile, threatening behavior and a violation of the Workplace Violence Prevention Policy and Procedure. It also alleged discriminatory behavior towards her. **Exh. 3 and Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 5, Exh. 16 and Exh. 18.**

Ms. Gelzheiser and Brenda Harris conducted dual investigation(s) involving the May 22, 2000 incident between the plaintiff and Georgette Fountain. The purposes of Ms. Gelzheiser's investigation into the incident was to determine whether or not the plaintiff violated Connecticut State Personnel Regulations, Section 5-240-1a(c) #4 "offensive and abusive conduct toward co-workers" and #8 "Deliberate violation of any law, State Regulation, or Agency Rule, specifically Executive Order No. 16, Violence in the Workplace Prevention Policy." Ms. Harris' purpose in investigating the incident involving the plaintiff and Ms. Georgette Fountain was to determine whether or not Mr. McLeod violated the agency's Affirmative Action Policy. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 6.**

According to Mr. Rudolph Jones, Director of Human Resources at the Department of Social Services, in an effort to prevent having witnesses approached by Affirmative Action and then by Personnel, dual or "joint" interviews are done by the Personnel Officer and Affirmative Action after which they then go and write their own independent investigations. **Exh. 6, Deposition of Rudolph Jones, p. 17:10-15**.

Ms. Gelzheiser interviewed Ms. Fountain, the plaintiff and other witnesses to the incident involving the plaintiff and Ms. Fountain. Upon completing the investigation, Ms. Gelzheiser

wrote and submitted her findings to Mr. Rudolph Jones. Ms. Gelzheiser found that Mr. McLeod

did not violate Executive Order #16, however, she did find that the plaintiff's behavior did

violate State Personnel Regulations, Section 5-240-1a(c), #4 "offensive and abusive conduct

toward co-workers," and recommended that a pre-disciplinary meeting be convened. **Exh. 5,**

**Affidavit of Lynn Gelzheiser, Paragraphs 7 and 8; and Exh. 20.**

In fact, the plaintiff agrees that a supervisor should be held to a higher standard than the

people they supervise, be a role model for the people they supervise, be sensitive to the needs of

their workers, as well as exhibit respect to the people he/she supervises. **Exh. 2, Deposition of**

**Ronald McLeod, p. 59:5-12**.

The plaintiff also agrees that a supervisor should exhibit dignity to the people he

supervises, and that the work atmosphere should be that of mutual respect, free from abusive and

arbitrary conduct. **Exh. 2, McLeod Deposition, p. 60:1-10**.

Regarding the May 22, 2000 incident involving himself and Georgette Fountain, the

plaintiff does not dispute that there was a loud, mutual exchange of words between himself and

Georgette Fountain. **Exh. 2, Deposition of Ronald McLeod, p. 63:14-15; p. 64:9-19; p. 65 7-**

**25**.

The plaintiff does not dispute that it was inappropriate for him to have allowed the

exchange between himself and Ms. Fountain to have taken place. **Exh. 2, Deposition of Ronald**

**McLeod, p. 75:19-25; p. 76:1-13**.

Upon Ms. Gelzheiser's findings as a result of her investigation into the May 22, 2000

incident involving the plaintiff and Ms. Fountain that the plaintiff's behavior did violate State

Personnel Regulations 5-240-1a(c), #4, the plaintiff received notification by the defendant that a

pre-disciplinary meeting would be scheduled involving the May 22, 2000 incident. **See Exh. 8.**

As a result of the information made available at the pre-disciplinary meeting, plaintiff was subsequently notified of his suspension. **See Exh. 9.**

Mr. Rudolph Jones is the Director of Human Resources for the Department of Social Services and has so been employed in this capacity for seven (7) years. His duties as the Director of Human Resources are numerous. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 3 and 4.**

Mr. Jones is also responsible for determining the appropriate level of discipline after the pre-disciplinary meeting is held, and is also authorized to place employees being investigated on Administrative Leave with pay under State Personnel Regulations Section 5-240-5a(f). **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 4 and 5.**

On or about August 30, 2000 Mr. Jones received an investigation report from Lynn Gelzheiser, Principal Personnel Officer for the Southwest Region regarding an incident involving Ronald McLeod and Georgette Fountain. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 6-9.**

On September 13, 2000 Mr. Jones sent a Certified Letter to Mr. McLeod scheduling a pre-disciplinary meeting in order to present charges of a violation of State Personnel Regulations Section 5-240-1a(c) #4, "Offensive or abusive conduct toward co-workers." **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 6-9.**

Mr. Jones conducted the Pre-Disciplinary meeting on September 21, 2000 in his office at 25 Sigourney Street, Hartford, CT. As a result of the investigation report findings and the Pre-Disciplinary meeting, he determined the appropriate level of discipline for the violation to be a four day suspension from duty without pay. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 6-9.**

On October 19, 2000 on Mr. Jones' behalf, Lynn Gelzheiser presented Mr. McLeod and his union representative Dan Sorenson with a letter dated October 16, 2000 notifying Mr. McLeod of the four day suspension from duty without pay. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 6-9**.

He filed a grievance and the grievance proceeded to Step Three (3) which was denied. **See Exh. 10**. The plaintiff's union representative advised him to allow his appeal to go to arbitration. **Exh. 2, Deposition of Ronald McLeod, p. 96:15-21; p. 97:1-4**.

Ms. Gelzheiser initiated an investigation into an incident involving the plaintiff, and Constance Onofrio which occurred on August 3, 2000. She was advised that an incident occurred between the aforementioned on this date, in which Ms. Onofrio alleged that the plaintiff swore and spit at her, and that she was afraid of him. This allegation, according to Ms. Gelzheiser, could be a potential violation of the Violence in the Workplace Prevention Policy. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 9, and Exh. 16**.

As a result, the plaintiff was placed on Administrative Leave With Pay. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 10; Exh. 11**.

Ms. Gelzheiser's investigation into the August 3, 2000 incident between the plaintiff and Ms. Onofrio focused on whether or not the plaintiff violated State Personnel Regulations, Section 5-240-1a(c), #4 and #8 and Executive Order No. 16. She interviewed the plaintiff and Ms. Onofrio. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraphs 11 and 12; Exh. 16**.

Ms. Gelzheiser found that the plaintiff's behavior toward Ms. Onofrio did not violate Governor John Rowland's Executive Order No. 16; however, his behavior did violate State Personnel Regulation 5-240-1a(c), #4, and she recommended that a pre-disciplinary meeting be convened. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 13, Exh. 16**.

9

On November 1, 2000 Mr. Jones sent a Certified Letter to Mr. McLeod scheduling a pre-disciplinary meeting in order to present charges of a violation of State Personnel Regulations Section 5-240-1a(c) #4, "Offensive or abusive conduct toward co-workers." The initial date for the Pre-Disciplinary meeting was subsequently rescheduled. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 10-15.**

Mr. Jones concurred with the decision made by Michael Carey, Principal Personnel Officer and Labor Relations representative for DSS and Lynn Gelzheiser to immediately place Mr. McLeod on Administrative Leave with pay. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 10-15.**

Mr. Jones concurred with the recommendation by Lynn Gelzheiser to reinstate Mr. McLeod from Administrative Leave. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 10-15.**

On or about October 23, 2000 Mr. Jones received an investigation report from Lynn Gelzheiser regarding the incident involving Ronald McLeod and Constance Onofrio.

Mr. Jones conducted the Pre-Disciplinary meeting on November 29, 2000 in his office at 25 Sigourney Street, Hartford, CT. As a result of the investigation report findings and the Pre-Disciplinary meeting Mr. Jones determined the appropriate level of discipline for the violation to be a one-day suspension from duty without pay. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 10-15.**

On February 1, 2001 on Mr. Jones' behalf, Lynn Gelzheiser presented Mr. McLeod and his union representative Dan Sorenson with a letter dated January 29, 2001 notifying Mr. McLeod of the one-day suspension and the date it would be served. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 10-15.**

The plaintiff subsequently entered into a stipulated agreement with the Department of Social Services regarding both of the suspension he received as a result of the May 22, 2000 incident with Georgette Fountain, and the August 3, 2000 incident involving Constance Onofrio. **Exh. 2, Deposition of Ronald McLeod, p. 98:24-25; p. 99:1-3; Exh. 19**. As part of the Stipulated Agreement, plaintiff withdrew all of his grievances. **Exh. 2, Deposition of Ronald McLeod, p. 99:6**.

The plaintiff signed the stipulated agreement which acknowledged that his behavior was inappropriate, and agrees that he entered into the stipulated agreement freely, voluntarily, without duress, intimidation, undue influence, or any threatened loss of benefit. **Exh. 2, Deposition of Ronald McLeod, p. 99:7-25; p. 100:1-3**.

The plaintiff also agreed that he was made whole for the reduction of his salary rate that was in effect at the time of his suspensions. **Exh. 2, Deposition of Ronald McLeod, p. 100:12-17**.

**ARGUMENT**

## I.    <u>STANDARD OF REVIEW</u>

A motion for summary judgment is granted when there is no genuine issue or dispute as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Larkin v. Town of West Hartford</u>, 891 F.Supp. 719, 723 (D.Conn. 1995). A dispute over a material fact exists if the evidence would allow a reasonable jury to return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material fact genuinely in dispute. <u>American Int'l Group Inc. v.</u>

London American Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981). However, "summary judgment

must be entered against 'a party who fails ... to establish the existence of an element essential to

[its] case, and on which it will bear the burden of proof at trial,'" Larkin, 891 F.Supp. at 723

quoting Celotex, 477 U.S. at 322.

> This court has held:

> In deciding whether there is a genuine issue of material fact, the court must draw
> all reasonable inferences in favor of the non-moving party. Anderson v. Liberty
> Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2502, 2513, 91 L.Ed.2d 202 (1986).
> Not every factual dispute will defeat a motion for summary judgment; a factual
> issue must be both "genuine" and "material". Id. at 247-48, 106 S.Ct. at 2509-10
> (emphasis omitted). A factual issue is not "genuine" unless "the evidence is such
> that a reasonable jury could return a verdict for the non-moving party." Id. at 248,
> 106 S.Ct. at 2510. A factual issue is not "material" unless "it might affect the
> outcome of the suit under the governing law." Id.

Larkin, 891 F.Supp. at 723-24.

Rule 56(c) "provides that the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." Anderson v. Liberty, 477 U.S. at

247-48. Generally speaking, summary judgment is inappropriate where an individual's intent or

state of mind are at issue. Patrick v. LeFevre, 745 F.2d 153, 159 (2d Cir. 1984). Summary

judgment is available to defendants in discrimination cases. As the Second Circuit held in Meiri

v. Dacon, 759 F.2d 989 (2d Cir.) cert. denied, 474 U.S. 829 (1985), in granting summary

judgment for the defendants.

> In so concluding, we are of course mindful that summary judgment is ordinarily
> inappropriate where an individual's intent and state of mind are implicated. The
> summary judgment rule would be rendered sterile, however, if the mere
> incantation of intent or state of mind would operate as a talisman to defeat an
> otherwise valid motion. Indeed, the salutary purposes of summary judgment -
> avoiding protracted, expensive and harassing trials - apply no less to
> discrimination cases than to commercial or other areas of litigation.

Id. at 998 (citations omitted); accord Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 40 (2d Cir. 1994).

To defeat the motion, the nonmoving party must show more than that "some metaphysical doubt as to the material facts." Matsushita v. Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). "A party may not 'rely on mere speculation or conjecture as to the true nature of facts to overcome a motion for summary judgment.'" McCloskey v. Union Carbide Corp., 815 F.Supp. 78, 81 (D.Conn. 1993) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12, (2d Cir. 1986) cert. denied, 480 U.S. 932 (1987). The "party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial for in doing so he risks the possibility that there will be no trial ... To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars would necessitate a trial in all Title VII cases." Meiri v. Dacon, 759 F.2d at 998.

"[S]ummary judgment allows the court to dispose of meritless claims before becoming entrenched in a frivolous and costly trial." Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir. 1987). Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a review of the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995). Once that burden is met, the opposing

party may not rely upon mere allegations or denials in his pleading, but rather must set forth specific facts showing that there is a genuine issue remaining for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) ("[e]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment"). *If the [plaintiff's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.*" Anderson, 477 U.S. at 249-250 (citations omitted) (emphasis added). As the Supreme Court has made clear, the Court must evaluate the defendant's motion for summary judgment according to the plaintiff's ultimate burden of proof. Anderson, 477 U.S. at 252; Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The fact that this case is an employment discrimination case does not alter the application of these rules. Although questions concerning the employer's intent may arise in such cases, the Second Circuit has emphasized that "the summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829 (1985); Johnson v. Air Tower Air, Inc., 149 F.R.D. 461, 466 (E.D.N.Y. 1993).

In the present case, the plaintiff's total lack of evidence to support the essential elements of his claim compels the conclusion that no reasonable jury could render a verdict in his favor. As the Second Circuit stated in another employment discrimination case, "**some** evidence is not sufficient to withstand a properly supported motion for summary judgment; a plaintiff opposing such a motion must produce sufficient evidence to support a rational finding that the legitimate,

14

nondiscriminatory reasons proffered by the employer were false, and that more likely than not

the employee's age [or national origin] was the real reason for the discharge." Woroski v.

Nashua Corporation, 31 F.3d 105, 109-110 (2d Cir. 1994) (emphasis in original).  In the absence

of such evidence, summary judgment for the defendant is not only appropriate, but warranted in

order to prevent the parties and this Court from "becoming entrenched in a frivolous and costly

trial."  See Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir.

1987); Raskin v. Wyatt, 125 F.3d 55, 65 (2d Cir. 1997).


**II.    THE PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION BECAUSE OF HIS RACE/COLOR, OR GENDER BECAUSE HE CANNOT PRODUCE EVIDENCE OF CIRCUMSTANCES GIVING RISE TO AN INFERENCE OF DISCRIMINATION.**

In the complaint, the plaintiff alleges in an entirely conclusory manner, that from

February, 2000 until the present, the plaintiff has been subjected by the defendant to a continuing

pattern and practice of discriminatory discipline and harassment in employment on the basis of

his sex (male), his race (Caucasian), his color (white), and his marital status (married to a

Hispanic woman) to the plaintiff's great economic and emotional damage.  The defendant is

entitled to summary judgment for several reasons.  First, the plaintiff cannot make out a prima

facie case of discrimination because the facts do not support an inference of discrimination.

Second, discrimination based on marital status is not a proper cause of action under Title VII, 42

U.S.C. §2000e.  Finally, the plaintiff cannot prove that the legitimate non-discriminatory reasons

for the defendant's actions, as set forth are false and are a pretext for discrimination.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), the Supreme Court

"established an allocation of the burden of production and an order for the presentation of proof,"

that applies to Title VII discriminatory treatment cases. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). According to the Supreme Court, the plaintiff in an employment discrimination case has the burden at the outset of "proving by a preponderance of the evidence a prima facie case of discrimination." <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 251, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); <u>see also</u> <u>McDonnell Douglas</u>, 411 U.S. at 802. If the plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action. <u>McDonnell Douglas</u>, 411 U.S. at 802. "Any legitimate, nondiscriminatory reason will rebut the presumption triggered by the prima facie case." <u>Fisher</u>, 114 F.3d at 1335-1336. "Thus, 'the defendant need not persuade the court that it was actually motivated by the proffered reasons' in order to nullify the presumption and obligate the plaintiff to satisfy the burden of proof." <u>Fisher</u>, 114 F.3d at 1335-36 <u>quoting</u> <u>Burdine</u>, 550 U.S. at 254; <u>see also</u> <u>Meiri v. Dacon</u>, 759 F.2d 989, 996 n. 11 (2d Cir. 1985).

"If the defendant articulates a nondiscriminatory reason for its actions, 'the presumption raised by the prima facie case is rebutted,'" <u>Fisher</u>, 114 F.3d at 1336, and "simply drops out of the picture." <u>St. Mary's</u>, 509 U.S. at 511. At this point, the plaintiff has an opportunity to prove by a preponderance of the evidence that the employer's reason was "a pretext for discrimination." <u>Burdine</u>, 450 U.S. at 253; <u>McDonnell-Douglas</u>, 411 U.S. at 804. In order to meet this burden, the plaintiff must show by a preponderance of the evidence "*both* that the reason was false, *and* that discrimination was the real reason." <u>Fisher</u>, 114 F.3d at 1339, quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (italics in original). It is not enough for the plaintiff simply to show that the employer's proffered reason for its actions was not the real reason. <u>Fisher</u>, 114 F.3d at 1337-1338. Thus,

16

"[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." St. Mary's, 509 U.S. at 507; Burdine, 450 U.S. at 253. In the present case, the plaintiff cannot meet this burden.

To defeat a motion for summary judgment on a claim of discriminatory treatment under Title VII, the plaintiff has the burden or proving:

> (1) that he belongs to a protected class; (2) that he was performing his duties
>
> satisfactorily; (3) that he was subjected to an adverse employment action; and
>
> (4) that the adverse action occurred in circumstances giving rise to an inference
>
> of discrimination on the basis of his membership in that class.

McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). The undisputed facts in this case clearly demonstrate that the plaintiff cannot meet this burden.

It is conceded that the plaintiff is a member of a protected class, that he was performing his duties satisfactorily and that he was subjected to an adverse employment action. However, it is not conceded, nor can the plaintiff show that the investigation(s) initiated by the defendant or the subsequent disciplinary action he received by the defendant as a result, gave rise to an inference of discrimination on account of his race/color, or gender.

### Investigations/Discipline(s)

It is uncontroverted that the defendant's Principal Personnel Officer, Lynn Gelzheiser, and the defendant's Affirmative Action Administrator, Brenda Harris, initiated investigation(s) into two separate incidents involving the plaintiff, as a result of two female employees, also employed by the defendant, who made separate complaints against him. **Exh. 3, Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 5 and Paragraph 9.**

17

Georgette Fountain, the individual involved in the May 22, 2000 incident with the plaintiff, alleged conduct on the part of the plaintiff which she described as hostile, threatening behavior which could be viewed as a violation of the Workplace Violence Prevention Policy and Procedure. Ms. Fountain also alleged that the plaintiff's behavior toward her was discriminatory. For this reason, Brenda Harris had to determine whether the plaintiff's conduct violated the defendant's Affirmative Action Policy. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraphs 5 and 6.**

Constance Onofrio, the individual involved in the August 3, 2000 incident with the plaintiff, alleged conduct which was a potential violation of the Violence in the Workplace Prevention Policy, as well as a violation of State Personnel Regulations Section 5-240-1a(c) #4 and #8. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraphs 9**.

As Principal Personnel Officer with the Department of Social Services, Ms. Gelzheiser is obligated to initiate and conduct investigations upon receipt of formal, written complaints made by any employee in the Southwest Region at the Department of Social Services. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraph 4**. In her capacity as the Affirmative Action Administrator, Ms. Harris must follow the procedure as outlined in the Department's Affirmative Action Complaint Procedure in conducting and initiating Affirmative Action investigations. **Exh. 26, Deposition of Brenda Harris, p. 39:9-25 and Exh. 18**. The determination is then made as to whether an individual's complaint alleges discrimination based on race/color, gender, age or national origin. **Exh. 26, Deposition of Brenda Harris, p. 41:8-19**. As such, the facts do not support, nor can the plaintiff produce any evidence or circumstances which gives rise to an inference of discrimination, as Ms. Gelzheiser and Ms. Harris are obligated to initiate and conduct investigations once allegations of discrimination or allegations of an alleged violation of State Personnel Regulations, or the Workplace Violence and Prevention Policy and Procedure are made against or by any employee or individual. **Exh. 5, Affidavit of Lynn Gelzheiser,**

**Paragraph 4**. Indeed, the very purpose of Ms. Gelzheiser initiating and conducting both investigations was to determine whether the plaintiff violated any of the State Personnel Regulations or Executive Order Number 16. The evidence clearly negates any inference or circumstances which would give rise to an inference of discrimination. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraphs 6, 14, 15, 16, 17, 18 and 24**.

**III.    THE DEFENDANT'S DECISION TO DISCIPLINE THE PLAINTIFF WAS BASED ON LEGITIMATE, NONDISCRIMINATORY REASONS.**

In the event that the court finds that the plaintiff has made out a prima facie case, the defendant asserts that their decision to discipline the plaintiff was based on legitimate, nondiscriminatory reasons. It is clear that the plaintiff was disciplined as a result of Lynn Gelzheiser's findings as a result of her investigation(s) into the May 22, 2000 incident and August 3, 2000 incident involving the plaintiff, Georgette Fountain and Constance Onofrio. **Exh. 5, Affidavit of Lynn Gelzheiser, Paragraphs 7, 8, 9 and 13**.

In his capacity as the Director of Human Resources, Mr. Jones is responsible for determining the appropriate level of discipline after the pre-disciplinary meeting, and is authorized to place employees being investigated on Administrative Leave with pay under the State Personnel Regulations Section 5-240-5a(f). He determines the level of discipline after the pre-disciplinary meeting and is authorized to do so. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 3, 4, and 5**.

Mr. Jones' authority to place an employee on Administrative Leave with pay is governed by Section 5-240-5a(f), and this is the regulation Mr. Jones utilized in making the decision to place the plaintiff on Administrative Leave with pay. **See Exh. 21**.

Mr. Rudolph Jones, Director of Human Resources for the Department of Social Services, upon receiving Ms. Gelzheiser's report and findings, concurred with her recommendations, and made the decision to suspend the plaintiff for four (4) days for the May 22, 2000 incident and one (1) day for the August 3, 2000 incident. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 6, 7, 8 and 11**. Mr. Jones concluded that the plaintiff's behavior as alleged had, in fact, violated State Personnel Regulations 5-240-1a(c) #4, and that the subsequent suspensions were warranted. **Exh. 6, Deposition of Rudolph Jones, p. 37:2-22; Exh. 7, Paragraphs 16, 17, 18, 23, 24 and 25**.

The plaintiff was not disciplined because of his race/color, or gender. Clearly, the reason the plaintiff was disciplined was because the defendant found that the plaintiff's conduct in both the May 22, 2000 and August 3, 2000 incident(s) violated State Personnel Regulation 5-240-1a(c) #4, "offensive and abusive conduct toward co-workers." **Exh. 7, Paragraphs 19, 20, 21, 22, 26, 27, 28 and 29**.

In fact, the plaintiff does not dispute that there was a loud, mutual exchange of words between himself and Georgette Fountain on May 22, 2000. **Exh. 2, Deposition of Ronald McLeod, p. 63:14-15; p. 64:9-19; p. 65:7-25**. The plaintiff also does not dispute it was inappropriate for him to have allowed the exchange between himself and Ms. Fountain to have taken place. **Exh. 2, Deposition of Ronald McLeod, p. 75:19-25; p. 76:1-13**. Additionally, the plaintiff does not dispute that a supervisor should be held to a higher standard than the people they supervise, be sensitive to the needs of (their) workers, as well as exhibit respect to the people he/she supervises. **Exh. 2, Deposition of Ronald McLeod, p. 59:5-12**. The plaintiff also agrees that a supervisor should exhibit dignity to the people he supervises, and that the work

20

atmosphere should be that of mutual respect, and free from abusive and arbitrary conduct. **Exh. 2, Deposition of Ronald McLeod, p. 60:1-10**.

In fact, the stipulated agreement the plaintiff entered into with the defendant, regarding both of his suspensions acknowledged that his behavior was indeed inappropriate. He entered into this agreement with the defendant freely, voluntarily, without duress, intimidation, undue influence, or any threatened loss of benefit. **Exh. 19, Exhibit 2 Deposition of Ronald McLeod, p. 98:24-25; p. 99:6; 7-25; p. 100:1-3**.

The reason for the initiation and conducting of the investigations, as well as the discipline the plaintiff subsequently received as a result, sets forth the defendant's legitimate, nondiscriminatory reason for their action. The plaintiff cannot and has not demonstrated that the defendant's legitimate, nondiscriminatory reason was a pretext for discrimination.

The Second Circuit Court has ruled:

> In order to survive a motion for summary judgment, at the third step plaintiff must put forth adequate evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the employer were false, and that more likely than not the [plaintiff's] [protected class status], was the real reason for the [challenged action]. Viola v. Philips Medical Systems of North America, 42 F.3d 712, 717 (2d Cir. 1994). The plaintiff has the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her on account of her [protected class status]. See Gallo, 22 F.3d at 1224.

Holt v. KMI-Continental, 95 F.3d 123, (2d Cir. 1996). The plaintiff can meet neither prong of this third-step burden in the instant case, regarding any of the challenged actions of the defendant, because the actions by the defendant was based on legitimate, non-discriminatory reasons. The reason for the investigation(s) and subsequent discipline(s), as it has been previously pointed out, all deal with the legitimate, nondiscriminatory issues.

The plaintiff can point to no direct evidence of such discrimination given the lack of any evidence supporting his Title VII claims. Therefore, the defendant is entitled to summary judgment.

## IV. PLAINTIFF CANNOT PROVE THAT THE DEFENDANT'S PROFFERED REASON FOR ITS ACTIONS WERE A PRETEXT FOR DISCRIMINATION.

Once the employer articulates a legitimate, nondiscriminatory reason for terminating the employee, the presumption of discrimination established by the employee's prima facie case disappears. *Fisher*, 114 F.3d 1137. At this point, the plaintiff employee must prove by a preponderance of the evidence both that the employer's proffered reason for terminating her "was false, *and* that discrimination was the real reason." *Fisher*, 114 F.3d at 1339 (emphasis in original); *St. Mary's*, 509 U.S. at 515. In the present case, the plaintiff cannot meet this burden.

There is NO EVIDENCE that the defendant's conduct towards the plaintiff was motivated by either his race or his gender.

The plaintiff's claim(s) that he was treated differently because he is a white male is totally without merit. **Exh. 2, Deposition of Ronald McLeod, p. 124:5-25; p. 125:1-14; p. 130:6-25; p. 131:1-16; p. 132:11-23**. Additionally, the plaintiff's claim(s) that he is held to a different "level" because he is a white, male supervisor again, is totally without merit. **Exh. 2, Deposition of Ronald McLeod, p. 125:11-14**. In fact, the defendant has disciplined African-Americans for engaging in similar conduct as the plaintiff as a result of being found in violation of the same State Personnel Regulation as the plaintiff. **See Exh's. 23 and 24**. As pointed out in **Exh. 23**, Marge Martin, an African-American female, was suspended for one (1) day because she

22

was found to have been verbally abusive toward security guards at the Department of Social Services, in violation of State Personnel Regulation 5-240-1a(c) #4. Ms. Susie Taylor, also an African-American female, was disciplined and was suspended for one (1) day as a result of engaging offensive and verbally abusive conduct toward a cow-worker. **See Exh. 24**.

Guy Glover, an African-American male, was suspended for two (2) days in 1998 for allegedly yelling at and pushing a co-worker. **See Exh. 22**. The plaintiff will undoubtedly argue that the behavior of the aforementioned, particularly Mr. Glover's, was not the same or similar behavior which he was disciplined and/or suspended for; that these individuals were not white, male supervisors; therefore, the facts and circumstances which gave rise to their discipline(s) are not comparable to his. The defendant submits that the plaintiff will be unable to cite any other white, male supervisor known by the defendant, who was found to have engaged in the same behavior as the plaintiff. **Exh. 7, Affidavit of Rudolph Jones, Paragraph 32; Exh. 25**.

During the period of 1992-2002, there were two (2) supervisors who were suspended for their conduct by the defendant. One male, the other a female. However, these individuals, even though supervisors and Caucasian, the behavior for which they were disciplined was not the same or even similar to the plaintiff's. **Exh. 27, Deposition of Michael Carey, p. 67:18-25; p. 68:2-25; p. 69:2-25; p. 70:1-25; p. 71:1-17**.

In fact, no other white, male supervisor for the past seven (7) years has been disciplined for the same or even similar conduct that the plaintiff was disciplined and suspended for. **Exh. 7, Affidavit of Rudolph Jones, Paragraphs 32 and 33, and Exh. 25**. Edmund Hauschild, a white, male supervisor employed by the defendant, was suspended for violating State Personnel Regulation 5-240-1a(c)(8), the defendant's policy prohibiting sexual harassment. Mr. Hauschild apparently subjected a subordinate to "sexual harassment" by sending e-mails which included